Mr. Justice James
delivered the opiuion of the court.
The exceptions taken in this ease, relate to the interpretation given by the court below, to the contract sued upon, *156 and to an instruction to the jury to find for the defendant. It is shown by the record that in October, 1872, the Board of Public Works made a contract with the defendant to lay down a wooden pavement on Twelfth street in this city. In the written contract there was a provision that:
“If at any time during the period of three years .from the completion of the work to be done under this contract any part or parts thereof shall become defective from imperfect or improper material or construction and in the opinion of the said party of the first part require repair, the said party of the second part will, on being notified thereof, immediately commence and complete the same to the satisfaction of the said party of the first part, and in case of failure or neglect of the said party so to do, the same shall be done under the directions and orders of the said party of the first part at the cost and expense of the said party of the second part.”
The declaration founds the action upon this clause of the contract. The proof was that within the three years specified, the pavement went pretty much to destruction ; whereupon the authorities of the District took up the whole of it —probably the whole of it — but certainly the whole of it but one square, and substituted an asphalt pavement which cost the District something over forty thousand dollars. Some of the blocks, what proportion we do not know by the proof, -were rescued from the wreck and were made use of in repairing or patching one of the squares. In the absence of any evidence directly showing the cause of the failure of the other blocks, it was argued that the fact that some of the blocks remained sound while others failed, should have gone to the jury as evidence from which they had a right to infer that the failure of the latter was from “ imperfect or improper material or construction.” It might, perhaps, have been very proper- to have allowed the jury to draw such an inference, had it been shown where those blocks that continued good were situated — whether they were placed in the same or like position, and subjected to the same exposure and wear and tear, as the blocks that failed ; but without such evidence, we do not think that the jury would have had *157 a right to conclude that because some of the blocks remained sound and others failed, the failure was to be considered as proof that they were not originally as good as those which survived ; in other words, that they were of “imperfect or improper material or construction.” It may have been that those which remained sound were not put upon the same basis or subjected to the same tests as those which failed. There was no evidence upon this point offered, and without it such an inference would have been unwarranted. Legal ■conclusions are not mere surmises ; the jury must have before it some basis of fact whereon to rest their conclusions before they will be allowed to make them.
It was claimed, however, that this clause in the contract amounted to a guarantee that the pavement should last three years. But that claim is in the very face of the language of the stipulation. It is there distinctly stated that “ if at any time during the period of three years any part of the pavement shall become defective from imperfect or improper material or construction,” such and such things shall be done. It was for that case alone that this clause provided, and we do not think that it can in any way be construed as a guarantee that the pavement should last three years in any event.
In further support of this argument, it was also .urged that the sixth clause of the contract contributed to this meaning. That clause reads as follows :
“ Sixth. It is further agreed that all loss or damage, arising out of the nature of the work to be done under this agreement, or from any unforeseen obstructions or difficulties which may be encountered in the prosecution of the same, or, from the action of the elements, or from incumbrances to individuals, property, or otherwise, on the line of the work, or adjacent thereto, shall be sustained by the said contractor.”
It is true enough that all parts of a contract are to be taken into consideration in construing it, but that very principle excludes the interpretation contended for. It is not to be supposed, that this clause, which has a special ap *158 plication, is to be enlarged to a general clause relating to-losses or damages. On the contrary it is evident, when all the language of this sixth clause is taken together, that it related to what might happen during the progress of the-work. The losses spoken of are associated with damages-which might be incurred during the prosecution of the work. It is a well-known clause in building contracts, that if the work should happen to be destroyed while in' course of construction that the contractor is to restore it.. As if, for example, in building a house, the walls are knocked down by any exterior force, they are to be built up again, or if the contractor, in the course of the erection of the building, injures any neighboring property, he is to assume all responsibility therefor. This, it seems to us, was the purpose of this sixth clause, and not that it was intended to enlarge the other clause into an unconditional guarantee that the-work was to last three years.
We come now to another question of interpretation. Evidently, "on the ground that this system of wood paving was a failure, the District substituted for it, as we have seen, an asphalt pavement, costing,- it is claimed, over $40,000, and it is now sought to recover from the defendant the cost of the work as damages under this clause of the contract.. We do not see how it is possible for this to be done. This contract requires the defendant to repair his pavement, not to substitute for it an entirely different one. When called upon to repair his old pavement, if he did not do so, the District was authorized to do it for him at his cost. J3ut this is-quite an other thing from substituting a new pavement of an altogether different character.
It has been argued that it is not to be supposed that the District would again put down the same kind of pavement which had been discovered to be a failure. That may be so, and was probably sound judgment; yet we do not see how it can be of any avail under the- contract upon which this action is based. The contractor was to repair a certain kind of wooden pavement, and the District reserved the right in case' of his failure to comply with this particular provision *159 of the contract, to do it for him at his expense. There was no reservation of any right to substitute in such case at the contractor’s expense an asphalt or any other kind of pavement. They were simply authorized, under certain conditions, to repair the old one. Our interpretation of the language of this contract is in entire accord with that of the court below.
It is said, however, that as some of the wooden pavement was relaid by the District, it should have been allowed to recover for that ; but here again there was no proof whatever as to the costs incurred by reason of this relaying. It is true it was shown that something over $1,200 was expended in taking up all of the wooden pavement, but what was the cost of relaying such of the blocks as were found useful for that purpose does not appear. Had the case gone to the jury, they would have been left entirely to conjecture as to that matter ; and even if the cost of relaying had been shown, there was still no proof that the expenditure was forced upon the District by reason of the imperfections of the contractor’s work. It does not follow because it was necessary to expend money upon this street that it is to be charged to the defendant. The expenditure may have been entirely unnecessary, or it may have been caused by a failure in the pavement not traceable to any defect or imperfection in the work for which the contractor was responsible, and, therefore, not chargeable to him. The burden of showing this was upon the plaintiff. In the entire absence, therefore, of any proof from which the jury might have even inferred the facts necessary to support a verdict against the defendant, and have enabled them to say that the expense to which the District was put in the relaying of these blocks arose out of the defective material or construction of the work, we are of the opinion that the court below was right in instructing the jury to render a verdict for the defendant. The judgment is, therefore, affirmed.